Angelos **DAMASKINOS**, Plaintiff,

v.

**SOCIETA NAVIGACION INTERAMERI-CANA, S.A., PANAMA, Western Shipping Corp., and S. G. Embiricos, Ltd., Defendants.**

No. 65 Civ. 777.

United States District Court
S. D. New York.

Jan. 11, 1966.

Jacob Rassner, New York City, for plaintiff.

Poles, Tublin & Patestides, New York City, for defendants; Christ Stratakis, New York City, of counsel.

## OPINION

McLEAN, District Judge.

This is an action at law by a seaman to recover damages for personal injuries which he sustained aboard the S.S. Resolute on November 28, 1964. The amended complaint alleges that defendants Societa Navigacion Interamericana, S.A., Panama,[1] ("Societa") and S. G. Embiricos, Ltd. ("Embiricos") were the owners of the vessel, that defendant Western Shipping Corp. ("Western") was their "managing agent and American alter ego," and that Western "managed, operated and controlled" the vessel and was its "owner pro hac vice." At another point the amended complaint alleges that "defendants" (presumably all three of them) owned the vessel and managed, operated and controlled it. The amended complaint charges that plaintiff was injured through the negligence of defendants. It also alleges that defendants were under a duty to "provide him with a seaworthy vessel * * * in accordance with the provisions of general maritime law, in addition to the provisions of the non-statutory laws of the United States." The amended complaint, however, does not allege that the vessel actually was unseaworthy. This omission apparently is due to inadvertence. Finally, the amended complaint alleges that plaintiff is a Greek national and that this court has jurisdiction under the Jones Act, the "General Maritime Law," under 28 U.S.C. § 1350, and under Article VI, Section 1 of a treaty dated August 3, 1951 between the United States and Greece.

Western moves for summary judgment dismissing the action against it. Societa and Embiricos move to dismiss the action on a variety of grounds including (1) failure to state a claim, (2) lack of jurisdiction over the subject matter, (3) forum non conveniens, and (4) the pendency in this court of a suit in admiralty brought by this same plaintiff against these same defendants for the same relief.

Defendants support their motion by eight affidavits and many exhibits. The affiants include an officer of Societa, a director of Embiricos, an officer of West-

1. The correct corporate name of this defendant apparently is Sociedad Naviera Interamericana S.A.

ern, a director of Andros Steamship Co., Ltd. ("Andros"), which "represents" the Resolute in Greece, and a Greek lawyer. Against this array plaintiff has submitted only the affidavit of his attorney. The attorney obviously has no personal knowledge of the facts, hence his affidavit clearly does not comply with Rule 56(e).

The moving affidavits establish the following facts without contradiction. Societa is a Panamanian corporation. None of its officers, directors or stockholders is an American citizen or an American resident. Presumably they are Greeks, although this fact is not stated unequivocally.

Societa owns the Resolute, which is registered in Liberia. It is a tramp steamer which trades about the world. Between January 1, 1963 and March 7, 1965 it touched at American ports on twelve occasions. It called at the Port of New York only once during that period.

Embiricos is a corporation organized under the laws of the United Kingdom with offices in London. Its directors are Greeks. None of its stockholders is an American citizen or an American resident. Embiricos is the general agent of Societa. It is responsible for the "general operation" of the Resolute, which includes arranging for its chartering, insurance, provisioning, maintenance, etc.

Andros is a Greek corporation having its office in Piraeus, Greece. It is the Greek representative of Embiricos and of vessels, including the Resolute, managed by Embiricos. In September 1964 Andros hired plaintiff to serve as a seaman aboard the Resolute. The contract of employment was signed by Andros and by plaintiff in Greece. It provided that:

"As for the rest it is mutually agreed that this contract is governed exclusively by the Greek Law in combination with the Collective Agreement, which has the force of the Law, between the Greek Shipowners' Union and the Panhellenic Seamen's Federation for the ships under Greek flag.

"In case of sickness of the seaman it is mutually agreed that the governing Law will be the Greek Private Nautical Code and it is further agreed that sickness pay during medical treatment will be that provided by the Greek Collective Agreement as applied on vessels under Greek flag. In the event of working accident the Greek Law 551 applies.

"Further more it is mutually agreed that any dispute that might arise between the contracting parties will be adjudicated by the Greek Courts of Athens only and in accordance with the Greek Law to the exclusion of any foreign Courts and Law of any other Country which for the purpose of this Agreement have no jurisdiction."

The Collective Agreement referred to in the contract of employment is an agreement between the Greek shipowners' association and various maritime unions which contains the following provision:

"1. Individual contracts of employment, on which the present Collective Agreement applies, will be governed exclusively as to any claim or right arising out of the seafarer's employment, including claims on account of illness or accident, by the provisions of the present Collective Agreement and Greek Law, being judged exclusively by the competent Greek Authorities and Greek Law Courts, resort to any foreign Courts and to any foreign Law being prohibited and expressly ruled out."

Greek Law 551 referred to in the employment contract is a statute which provides for compensation to injured employees regardless of the fault of the employer. It also provides that the employer shall pay all medical and hospital expenses of the injured workman for a period not exceeding two years. The statute is apparently in the nature of a workmen's compensation act. According to the affidavit of the Greek lawyer submitted in support of this motion, the statute permits an injured workman, under certain circumstances, to elect to sue

for damages in lieu of accepting compensation.

Plaintiff is a Greek national. All the officers and crew members of the Resolute are Greek nationals and they were hired in Greece as plaintiff was. The vessel is registered with the Greek Seamen's Pension Fund, to which both the seamen and Societa contribute.

Western is a New York corporation having its office in New York. At the request of Embiricos, it acts as husbanding agent in New York for ships managed by Embiricos. This involves arranging for tugs, pilots, stevedores, customs clearance and the like, when a vessel calls at the Port of New York. Ever since the Resolute was commissioned in 1959 it has called at the Port of New York only once, i. e., at Newark on November 21, 1964. On that occasion, Western discharged its duties as husbanding agent.

The accident which gives rise to this action occurred a few hours after the Resolute left Newark on November 28, 1964, bound for Houston, Texas. The exact location of the vessel at the moment of the accident does not appear. She was somewhere off the New Jersey coast.

Plaintiff sustained his injury when he fell through an open hatch into the vessel's hold. Details as to how he came to do this are lacking. Plaintiff's attorney states in his affidavit "on information and belief" that Western ordered the master of the vessel to put to sea with the hatches open. The affidavit contains no showing whatever as to the nature or source of the affiant's alleged information or the grounds of his alleged belief. The statement of the ship's chief officer incorporated in the affidavit of defendants' attorney, on the other hand, is that it was he, the chief officer, who gave the order to open one section in each hatch "in preparation for shifting boards installation."

After the accident, plaintiff was taken by the Coast Guard to a hospital in Lakewood, New Jersey, where he remained several days. Subsequently, on June 1, 1965, he was sent back to Greece at the direction of the United States Immigration authorities. He has been in Greece ever since.

### Western's Motion for Summary Judgment

■ It is entirely clear from the uncontradicted facts set forth in the moving affidavits that the allegation of the complaint that Western "owned" the Resolute, as well as the allegation that Western was the vessel's owner "pro hac vice," are untrue. It is equally clear that the allegation that Western "managed, operated and controlled" the vessel is untrue. It is equally plain that Western was not plaintiff's employer. The husbanding agent of a ship owned by someone else is not the employer of the seamen on the ship and is not liable to them for personal injuries under the Jones Act or the general maritime law. Cruz v. Maritime Overseas Corp., 1963 Am.Mar.Cas.1870 (S.D.N.Y.1962).

The affidavit of plaintiff's attorney does not even attempt to raise an issue on any of these points. Indeed, the affidavit appears to concede them, for it states:

"The fact that said defendant [Western] neither owned, operated nor controlled the vessel is entirely immaterial."

Plaintiff's attorney has attempted to shift his ground by claiming that Western affirmatively ordered the master of the vessel to leave the hatches open. There is no such charge in the complaint. There is no evidence to support it. The bare assertion of plaintiff's attorney, who has no personal knowledge of what occurred, is insufficient to raise a triable issue. Defendant Western's motion is therefore granted.

### The Motion of Societa and Embiricos

■ The uncontroverted facts hereinbefore summarized require the conclusion that the Jones Act (46 U.S.C. § 688) and the general maritime law of the United States, apart from statute, do not apply to this action by a Greek seaman on a Liberian vessel, who has signed an

employment agreement in Greece which provides that his rights shall be governed by Greek law and shall be enforceable only in Greek courts. If the Liberian flag of the vessel is thought to be a "flag of convenience," it is one for the convenience of Greeks, not Americans. If Greek nationals choose to operate their shipping business through the medium of a Panamanian corporation whose vessels are registered in Liberia, that policy is of no concern to the United States, and it affords no reason for the application of the law of the United States to the claims of seamen on those vessels. Brillis v. Chandris (U.S.A.) Inc., 215 F.Supp. 520 (S.D.N.Y.1963); Tsakonites v. Transpacific Carriers Corp. et al., 246 F.Supp. 634, S.D.N.Y. March 4, 1965.

This case has no substantial contacts with the United States. Consequently, plaintiff has no claim for relief under the Jones Act or the general maritime law of the United States. Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Tjonaman v. A/S Glittre, 340 F.2d 290 (2d Cir.), cert. denied, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965); Karakatsanis v. Conquestador Cia. Nav., S.A. et al., 247 F.Supp. 423 (S.D.N.Y.1965).

▮ It remains to consider plaintiff's allegation that "jurisdiction" rests on 28 U.S.C. § 1350 and upon the treaty between the United States and Greece. 28 U.S.C. § 1350 provides:

"The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

This statute has no application here. Negligence in providing a seaman with a safe place in which to work, and unseaworthiness of a vessel in that respect, are not violations of the law of nations. Lopes v. Reederei Richard Schroder, 225 F.Supp. 292 (E.D.Pa.1963).

This action based upon the Jones Act is not an action for a tort committed in violation of the law of nations within the meaning of this statute. Nor is it an action for a tort committed in violation of a treaty of the United States.

▮ The treaty upon which plaintiff relies provides:

"Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights."

This treaty merely affords Greek nationals a right of access to United States courts "in pursuit of their rights." If they have no enforceable rights, their opportunity for access to the courts is unimportant. The treaty does not create a cause of action. It has nothing to do with the negligence of shipowners or the unseaworthiness of their vessels. Obviously, the treaty does not entitle a Greek national to maintain an action in a United States court regardless of whether there is any proper basis for his claim.

Since the Jones Act and the general maritime law of the United States do not afford this plaintiff a right to relief against defendants Societa and Embiricos in this action at law, the motion of those defendants to dismiss this action must be granted. It is thus unnecessary to consider the other questions raised by defendants. As previously stated, plaintiff is also suing these defendants in this court in admiralty on the same claim. Whether that action may be maintained, or whether the admiralty court should decline to exercise jurisdiction over it, are questions which are not before me and as to which I express no opinion.

For the reasons heretofore stated, this action is dismissed against all defendants.

So ordered.